**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 12 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| O. L., | No. 21-55740 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-00797-RGK-JDE |
| v. | |
| LILIANA JARA; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 13, 2022
Pasadena, California

Before: BADE and LEE, Circuit Judges, and CARDONE,** District Judge.

Plaintiff-Appellant "O.L." sued, claiming that officers at the City of El Monte Police Department (EMPD) and Los Angeles Sheriff's Department (LASD) mishandled their investigations of her claim of rape. She alleged violations of the Equal Protection Clause and the Fourth Amendment, and brought claims against

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

individual officers under 42 U.S.C. § 1983 and against the municipalities under section 1983 and *Monell v. Department of Social Services of N.Y.C.*, 439 U.S. 658 (1978), among other things. The district court dismissed the equal protection claims against the individual officers and municipalities, and granted summary judgment for the defendants on the Fourth Amendment claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

O.L. met her alleged assailant online and went on a date with him. She claimed that he raped her later that night, and she reported it to the EMPD. O.L. showed Officer Martha Tate messages on her cell phone between herself and the alleged assailant. In those messages, O.L. casually discussed the sexual activity that occurred the night of the alleged rape and agreed to meet him again for a future sexual encounter. Based on these messages, Officer Tate questioned O.L. about alcohol use, consent, and her motive for reporting the alleged crime.

O.L.'s case was later transferred to LASD. Detective Liliana Jara interviewed her. O.L. showed Detective Jara the same messages on her cell phone. Detective Jara also saw a message in which O.L. told the alleged assailant that she "could make him lose his job" after she discovered that he had remained active on the online dating website where they met. The detective, too, questioned O.L. about her motive for reporting the alleged crime and ultimately told O.L. that her case suffered from

many problems.

At the end of the interview, O.L. agreed to provide her cell phone to LASD to download messages. O.L. provided Detective Jara with her cell phone password and signed a form giving LASD consent to search the phone for "any and all data" related to the case. Before returning the phone to her, LASD's task force downloaded the phone's data onto a USB drive to allow the investigating officer to review the data. O.L. then retrieved her cell phone from LASD custody.

After the Los Angeles District Attorney declined to file charges against the alleged assailant, O.L. filed a *pro se* complaint. The district court denied O.L.'s request to proceed under a pseudonym, and O.L. filed an amended complaint replacing "Jane Doe" with her supposed initials. The district court dismissed the equal protection and *Monell* claims, and then granted summary judgment for defendants on the Fourth Amendment claim.

## DISCUSSION

1. <u>Fourth Amendment Claim</u>: O.L. argues that Detective Jara unlawfully searched her phone and that LASD's copying of data from her phone amounted to an illegal seizure.

First, O.L. has not shown that Detective Jara violated her Fourth Amendment right against unreasonable searches. O.L.'s only evidence that her phone was searched is a screenshot image of a single message on her phone from a friend that

was translated from Chinese into English in her WeChat App. She claims that the message was translated while the phone was in LASD's custody, but the screenshot she provided does not show when the translation happened. O.L. cannot create a factual dispute by speculating that Detective Jara searched the phone and translated the message. *See Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." (alternation in original) (citation omitted)).

In any event, O.L. consented to the search. She admits to signing a form when she voluntarily gave her cell phone and its password to Detective Jara. O.L.'s signature is on a form called "Entry and Search Waiver," which is dated that same day. The form gave LASD "full and unconditional authority," and "unrestricted access" to search O.L.'s cell phone. O.L. maintains that she did not sign this form, but she has abandoned the argument that her signature was forged by failing to challenge the district court's finding on appeal. The only plausible inference is that O.L. signed the search waiver form when she gave her cell phone to Detective Jara. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Second, qualified immunity bars her unlawful seizure claim because it is not

clearly established that copying electronic data for review after voluntarily agreeing to a search amounts to a Fourth Amendment violation. *See Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (requiring "prior case law that articulates a constitutional rule specific enough to alert [the officer] in this case that [her] particular conduct was unlawful" (emphases omitted)). In *Arizona v. Hicks*, the Supreme Court held that the police copying down the serial numbers on stereo equipment "did not constitute a seizure" because "it did not meaningfully interfere with respondent's possessory interest in either the serial numbers or the equipment." 480 U.S. 321, 324 (1987) (internal quotation marks omitted). While the nature of cell phone data is different than serial numbers on a stereo, it is unsettled as to how far the "possessory interest" principle extends.

O.L.'s reliance on *United States v. Comprehensive Drug Testing, Inc.* (*CDT*) is misplaced. *See* 621 F.3d 1162 (9th Cir. 2010) (en banc) (per curiam), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam). In that case, the court authorized the federal government to seize "considerably more data than that for which it had probable cause," subject to certain procedural safeguards. *Id.* at 1168–69. The government, however, ignored the required protocols, seized large amounts of data, and later justified its retention of the seized data under the "plain view" doctrine. *Id.* at 1169–72. On appeal, we cautioned against the government retaining unresponsive data

based on the plain view doctrine. *Id.* at 1169–71, 1174. We, however, recognized that "over-seizing is an inherent part of the electronic search process." *Id.* at 1177; *see also United States v. Flores*, 802 F.3d 1028, 1044–45 (9th Cir. 2015). *CDT* does not put it beyond debate that law enforcement making a temporary local copy of cell phone data while consensually possessing the phone constitutes an unlawful seizure.

    2. Equal Protection Claim: To state an equal protection claim under § 1983, O.L. must plausibly allege facts showing that "the defendants acted with an intent or purpose to discriminate against [her] based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (internal quotation marks omitted). She does not allege facts showing that the officers treated her investigation differently than other criminal investigations. For example, she alleges that Officer Tate asked O.L.: "What made her think she was a victim of rape." The Second Amended Complaint then simply concludes that "[v]ictims of other type[s] of crimes would not be asked the same question." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    3. *Monell* claims: O.L. failed to state cognizable *Monell* claims against the City of El Monte and the County of Los Angeles. To establish municipal liability, O.L. must allege: "(1) she was deprived of a constitutional right; (2) [EMPD and LASD] had a policy; (3) the policy amounted to a deliberate indifference to her

constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Mabe v. San Bernardino County, Dept. of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001) (internal quotation marks omitted).

O.L.'s *Monell* claim for violation of equal protection fails because she did not show any underlying constitutional violation. *See Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). Moreover, O.L.'s conclusory allegations focus only on the handling of her case, and she has not articulated any "persistent and widespread" customs that "constitute a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks omitted).

4. Leave to amend: The district court did not abuse its discretion in denying O.L. leave to amend her complaint for the third time. O.L. had already amended her complaint, and, before ruling on the motion to dismiss, the judge stopped the proceedings multiple times to allow O.L. time to think about additional allegations to cure her complaint. But O.L. responded with redundant allegations and conclusory statements.

5. Redaction: The district court did not abuse its discretion in denying O.L.'s motion to seal an exhibit filed with the court. *See Pintos v. Pac. Creditors Ass'n*,

605 F.3d 665, 679 (9th Cir. 2010).[1] O.L. contends that sealing or redacting a portion of the record is "necessary to preserve [her] anonymity," but the district court determined that the portion of the record at issue did not "itself identify [O.L.] by name." O.L. has not challenged this finding on appeal or shown that this finding was "illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). O.L. has not met her burden of showing a "compelling reason" for sealing the document. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). We thus affirm the district court's denial of the request to seal.[2]

**AFFIRMED.**

---

[1] O.L. has filed similar cases in other courts involving different individuals and municipalities. Decl. of Erin R. Dunkerly at 13–14, *O.L. v. City of El Monte, et al.*, No. 21-55246 (9th Cir. Aug. 9, 2021), ECF No. 5; *see, e.g., Doe v. City of Concord*, No. 22-15384 (9th Cir. docketed March 15, 2022); *Doe v. U.S Dist. Ct. for the Cent. Dist. of Cal.*, No. 22-70056 (9th Cir. denied April 19, 2022). In those other cases, as here, she proceeds either as Jane Doe or by initials (which may or may not be her own). While O.L. makes it difficult to track her cases because she uses initials or pseudonyms, we caution that "[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990).

[2] O.L. requests that this same document be redacted or sealed in the record on appeal. Because O.L. has not met her burden of showing a "compelling reason" to seal the document, we decline to order this document sealed in the record before this court.